62 F.3d 1244
 68 Fair Empl.Prac.Cas. (BNA) 1002,
66 Empl. Prac. Dec. P 43,664,
95 Cal. Daily Op. Serv. 6488,
95 Daily Journal D.A.R. 11,080
Norman C. GIRARD, Plaintiff-Appellant,
v.
Robert RUBIN*, Secretary of the Treasury,
Defendant-Appellee.
 No. 94-15514.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 14, 1995.
Decided Aug. 17, 1995.
 
 Norman C. Girard, Aptos, CA, pro se.
 Ann M. O'Regan, Office of the U.S. Atty., San Francisco, CA, and Jocelyn Burton, Office of the U.S. Atty., San Jose, CA, for appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before: SNEED, CANBY, and FERNANDEZ, Circuit Judges.
 FERNANDEZ, Circuit Judge:
 
 
 1
 Norman C. Girard appeals the district court's summary judgment in favor of the Secretary of the Treasury on the ground that Girard failed to file his Title VII and age discrimination claim within the relevant statute of limitations. Girard alleged that he was wrongfully denied two Internal Revenue Service management positions in 1984 and 1985 because he had been removed from a management selection program on account of his sex, race, and age. We reverse.FACTS AND PROCEDURAL HISTORY
 
 
 2
 Norman C. Girard, a white male, was 46 years of age at the time of the relevant events. He is a Revenue Officer for the Internal Revenue Service at the Santa Cruz Branch Office in Santa Cruz, California. In October, 1983, Girard applied for and was accepted into the Regional Management Careers Program (RMCP). The purpose of the RMCP is to create a pool of well-qualified candidates who have been recommended for management positions. RMCP members who are rated qualified for positions covered by the program are automatically referred for consideration when vacancies occur. A local screening panel reviews and rates candidates to determine which ones will be recommended to the head of the office as highly qualified. When a managerial position is announced, RMCP participants have the "first shot" at filling it. If it is not filled by an RMCP participant, the office may announce the position as subject to an ad hoc nationwide search; RMCP members may re-interview for the ad hoc position along with non-RMCP applicants. Membership in the RMCP lasts for one year. The application process begins in October and is usually complete by the following January. A current participant may "roll over" into membership for the following year by filing out an application; this eliminates the need for participants to re-interview for a spot in the program.
 
 
 3
 In 1984, there were two Supervisory Revenue Officer RMCP positions advertised in the San Jose District where Girard worked. One was in Salinas and the other was in San Jose. Girard interviewed for the Salinas position in September 1984. He was told that because his interview was less than adequate he was not selected for the position. The Salinas position was eventually filled on January 6, 1985, by Deborah Treece, a 34-year-old white female.
 
 
 4
 Girard alleges that on or about November 1, 1984, Frank Nixon, Girard's Field Branch Chief, called him to tell him that he was removing him from the RMCP. Nixon denies that that ever happened. Instead, Nixon claims that Girard failed to comply with the "roll over" procedures to be a participant in the RMCP for 1985. Girard, for his part, considered himself removed from the RMCP as of November 1984.
 
 
 5
 On February 17, 1985, Liz Sanchez was selected for the San Jose Revenue Officer position. She is an Hispanic female who was 26 years of age at the time. Girard was not considered for that position because he was not an RMCP participant in 1985.
 
 
 6
 On July 30, 1987, the IRS sent a letter to Girard proposing to suspend him for three days for failing to protect the interest of the federal government by allowing a statute of limitations to lapse. Girard contacted an Equal Employment Opportunity (EEO) counselor on August 28, 1987, and complained of discrimination based on his age, sex, and race due to his nonselection to a management position. On October 14, 1987, Girard filed a formal complaint of discrimination with the IRS. The IRS Regional Complaints Center (RCC) requested more information from Girard on November 10, 1987. Specifically, it asked why he had waited three years to file a complaint based on his nonselection for a management position in 1984 and early 1985. Girard responded that it was not until he had gone to the EEO counselor that he learned that Nixon, as a Field Branch Chief, did not have the authority to remove him from the RMCP. On December 14, 1987, the IRS rejected Girard's complaint as untimely. Girard appealed the decision to the Equal Employment Opportunity Commission (EEOC), which found on June 8, 1988 that Girard's claim that he was removed from the RMCP based on his age, race, and sex was timely because he "could not have reasonably known that his discharge from the RMCP was unauthorized and improper until he was told this fact by the EEO Counselor."
 
 
 7
 Pursuant to the EEOC's decision, which the IRS did not seek further review of, the IRS accepted the complaint and began an investigation. On December 19, 1988, the RCC issued a proposed disposition which found no discrimination. On December 28, 1988, Girard requested a hearing before an EEOC administrative judge.
 
 
 8
 A hearing on Girard's individual complaint was ultimately held and the administrative judge issued a recommended decision that Girard was improperly removed from the RMCP in 1984 and had therefore been denied a management position based on his race, sex, and age. Nevertheless, on November 18, 1992, the IRS issued a final agency decision rejecting all of Girard's discrimination claims on their merits. Girard appealed that decision to the EEOC, which affirmed the final agency decision on July 8, 1993.
 
 
 9
 Then Girard timely filed this action in district court. On cross-motions for summary judgment, the district court granted the Secretary's motion. It found that Girard had not complied with the relevant thirty-day statute of limitations because he had waited nearly three years to file his administrative complaint. The district court subsequently denied Girard's motion for reconsideration. This appeal followed.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 10
 The district court had jurisdiction pursuant to 42 U.S.C. Sec. 2000e-16 and 29 U.S.C. Sec. 633a. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 
 11
 We review a grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 DISCUSSION
 
 12
 In order for a federal employee's administrative discrimination complaint to be considered timely filed, the matter must have been brought to the attention of an EEO counselor.
 
 
 13
 within 30 calendar days of the date of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event personnel action.
 
 
 14
 . . . . .
 
 
 15
 29 C.F.R. Sec. 1613.214(a)(1)(i). Failure to bring a claim within the thirty-day period precludes a plaintiff from pursuing his discrimination claim in federal court. See Johnson v. United States Treasury Dep't, 27 F.3d 415, 416 (9th Cir.1994); Boyd v. United States Postal Serv., 752 F.2d 410, 414-15 (9th Cir.1985); cf. Brown v. General Servs. Admin., 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). It is undisputed that Girard did not seek to file an EEO complaint until October 14, 1987, nearly three years after the alleged incidents. Therefore Girard's claim can survive only if he can prove waiver, estoppel, or equitable tolling. See Boyd, 752 F.2d at 414-415. Because the EEOC issued a final ruling that Girard's complaint was timely filed, we hold that he has proved that the government has waived the thirty-day limitation.
 
 
 16
 Although failure to meet the thirty-day time limit normally results in an untimely complaint:
 
 
 17
 [t]he agency shall extend the time limits ... when the complainant shows that he/she was not notified of the time limits and was not otherwise aware of them, was prevented by circumstances beyond the complainant's control from submitting the matter within the time limits; or for other reasons considered sufficient by the agency.
 
 
 18
 29 C.F.R. Sec. 1613.214(a)(4) (emphasis added). In this case, the IRS alleged the bar of the statute of limitations from the beginning. However, Girard appealed the IRS's initial rejection of his complaint on timeliness grounds and the EEOC issued a decision that the complaint was timely. The EEOC instructed the IRS to begin an investigation and the IRS did so without seeking further review. The Secretary points out that:
 
 
 19
 [t]he mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination.
 
 
 20
 Boyd, 752 F.2d at 414. Thus, he argues that the IRS investigation led to an administrative finding of no discrimination; that finding was affirmed by the EEOC; and that it follows that the IRS did not waive its objections to the timeliness of the complaint.
 
 
 21
 However, this situation differs from that presented in Boyd. The IRS did not receive and accept Girard's complaint and begin investigating, only to determine later that the filing was untimely. Quite the contrary. The IRS dismissed Girard's complaint for failure to comply with the statute of limitations; it made an express finding at the very beginning that the complaint was not timely. Cf. Rowe v. Sullivan, 967 F.2d 186, 191 (5th Cir.1992) (no agency waiver of timeliness argument because agency did not make a specific finding that the submission was timely, nor did the EEOC make such a finding); Shea v. Tisch, 870 F.2d 786, 788 (1st Cir.1989) (per curiam) (where agency had "expressly concluded plaintiff's filing was timely" it was barred from alleging in federal court that plaintiff had failed to comply with thirty-day time limitation). But the IRS did not have the final say on the matter. The EEOC's Office of Review and Appeals found that the complaint was timely. It remanded the proceedings to the IRS and directed it to begin an investigation. That was a final binding order on the IRS, with which it had to comply unless it filed a motion to reopen within thirty days. See 29 C.F.R. Secs. 1613.234-.237; Smith v. Kaldor, 869 F.2d 999, 1006 n. 6 (6th Cir.1989) ("A decision by the Office of Review and Appeals is final unless, within 30 days of receipt, either party files a timely request to reopen....").
 
 
 22
 The IRS neither appealed nor refused to proceed; instead, it began an investigation. Because that issue has already been resolved against it by a binding decision of the EEOC, the IRS may not now raise the argument that it did not waive the timeliness argument. In Haskins v. Department of the Army, 808 F.2d 1192, 1199-1200 (6th Cir.), cert. denied, 484 U.S. 815, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987), the court determined that an employee could seek review of parts of a favorable EEOC decision without risking a review of the remainder of that decision. As the court said:
 
 
 23
 Pursuant to statute and regulations, the federal employing agency and the EEOC are empowered to enter final orders which are binding on the employing agency. [citations] In a private-sector case, the EEOC does not have the power to issue final decisions which are binding on the employer. If a federal employee has received a favorable determination at the administrative level, he or she is able to go into federal court to enforce that order without risking de novo review of the merits. Thus, the employing agency cannot challenge issues decided against it if the plaintiff does not seek de novo review.
 
 
 24
 Id. at 1199 n. 4; see also Morris v. Rice, 985 F.2d 143, 145 (4th Cir.1993) (final decisions of EEOC are binding on federal agencies and in seeking review an employee may tailor his request for relief); Moore v. Devine, 780 F.2d 1559, 1563 (11th Cir.1986) ("Federal district courts have uniformly granted requests for enforcement of favorable final agency and EEOC decisions without requiring de novo review of the merits of the discrimination claims...."); Houseton v. Nimmo, 670 F.2d 1375, 1378 (9th Cir.1982) (final decision of EEOC denying request to reconsider a favorable agency ruling entitled plaintiff to an enforcement order from the district court without de novo review).
 
 
 25
 The EEOC made a final decision that Girard's complaint was timely. The effect of the decision was to waive the thirty-day filing requirement, and to require a determination of Girard's complaint on the merits. That decision was binding on the IRS. Consequently, the IRS was not entitled to a second bite at the apple in the district court. Because we base our decision on waiver grounds, we need not and do not address Girard's tolling and estoppel claims.
 
 
 26
 Finally, Girard argues that his Age Discrimination in Employment Act (ADEA) claim is still viable because he has exhausted his administrative remedies. Exhaustion, however, would not assist him if his ADEA complaint was not timely filed in the first instance. See Boyd, 752 F.2d at 414. An employee seeking remedies under the ADEA may either pursue a direct action in federal court after notifying the EEOC, or may pursue administrative remedies by filing a complaint with the EEOC and then seek review in district court if he is not satisfied with the result. See 29 U.S.C. Sec. 633a; Stevens v. Department of Treasury, 500 U.S. 1, 7, 111 S.Ct. 1562, 1566-67, 114 L.Ed.2d 1 (1991). Girard did not choose the former route nor did he comply with its requirements. Instead he asserted an age discrimination claim when he filed his complaint with the IRS on October 14, 1987. His ADEA claim was, therefore, subject to the same thirty-day limitation that applied to his sex and race discrimination claims. See 29 C.F.R. Secs. 1613.214(a)(1)(i), 1613.511; Proud v. United States, 872 F.2d 1066, 1068 (D.C.Cir.1989) (agencies may accept ADEA complaints "only if the complainant first brought the allegedly discriminatory action to the attention of an EEO counselor within thirty days of its effective date"). In short, if his other claims had fallen because of his failure to timely file, his ADEA claim would have fallen along with them. However, the EEOC's final decision that Girard did timely file applied to his ADEA claim as well.
 
 CONCLUSION
 
 27
 When a government employee seeks to pursue a claim of discrimination under Title VII or the ADEA, the government cannot be at war with itself. Protean though it may sometimes be, it cannot in its EEOC form say that the employee may go forward, while in its IRS form it says he may not. Once the EEOC determined that Girard was entitled to pursue his discrimination claims the IRS was not entitled to ask a court to hold otherwise. It was bound.
 
 
 28
 REVERSED and REMANDED for a consideration of the merits of Girard's discrimination claim.
 
 
 
 *
 Robert Rubin is substituted for his predecessor, Lloyd Bentsen, as Secretary of the Treasury